**UNITED STATES of America**

v.

**Clark DARDEN, Defendant.**

**Case No. 09–602M.**

United States District Court,
D. Maryland.

Sept. 24, 2009.

## MEMORANDUM OPINION AND ORDER OF COURT

THOMAS M. DiGIROLAMO, United States Magistrate Judge.

In the case of *Melendez–Diaz v. Massachusetts*, —— U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), the United States Supreme Court held that affidavits prepared by state laboratory analysts reporting the results of the forensic analysis on controlled substances are testimonial and, thus, not admissible at trial absent a showing that the analysts were unavailable to testify at trial and that the defendant had a prior opportunity to cross-examine them. In the instant case, the Government seeks to admit into evidence the results of the forensic analysis of Defendant's blood through the testimony of a supervising toxicologist, but without the testimony of the lab technicians who actually conducted the tests on the blood. The issue for the Court is whether or not the testimony is admissible in light of the holding in *Melendez–Diaz*.

Defendant, Clark Darden, was charged with unsafe operation of a vehicle in violation of 36 C.F.R. § 4.22(b)(1) and operating a motor vehicle while the alcohol concentration in his blood was .08 grams or more per 100 milliliters of blood in violation of 36 C.F.R. § 4.23(a)(2). The alleged violations occurred on December 13, 2008 on the Suitland Parkway which is located within the special maritime and territorial jurisdiction of the United States. Trial commenced on July 6, 2009 at which time the issue regarding the admissibility of the testimony of the toxicologist was raised in light of the Supreme Court's recent decision in *Melendez–Diaz*. At the time of trial, the Government submitted a Memorandum of Law: Admissibility of Testimony of Forensic Expert. The Court admitted the testimony of Mr. Lucas Zarwell, the Government's forensic expert, subject to later striking said testimony after the parties had an opportunity to further brief the issue. In accordance with the briefing schedule set by the Court, Defendant responded on July 20, 2009 and the Government filed a supplemental memorandum on July 28, 2009. For the following reasons, the Court finds that the testimony of Mr. Zarwell is admissible and accordingly, the Court's prior ruling to admit the testimony stands.

Mr. Zarwell's testimony can be summarized as follows. He is the Deputy Chief Toxicologist for the Office of the Chief Medical Examiner for the District of Columbia and in that position he supervises the lab. His lab conducts forensic analyses on specimens submitted by a variety of government agencies, including the United States Park Police, the arresting agency in this case. Specifically, the lab conducts forensic analyses on blood specimens submitted by law enforcement agencies to determine its alcohol concentration. Mr. Zarwell testified in detail as to the procedures and processes employed by the lab in the analysis of blood specimens, including the receipt and accession of the sample into the lab, the assignment of the testing of the specimens to lab technicians, the actual testing procedures and the quality control measures employed to assure the accuracy of the testing. He testified that three tests were conducted on Defendant's blood sample and identified the two lab technicians who conducted the tests. Significantly, Mr. Zarwell testified that once the tests are conducted, the data from the tests are given to him. He reviews the

data, including quality control data, and reaches a conclusion as to whether or not the sample contains alcohol and, if so, in what concentration. He then prepares a written report containing his conclusions. Mr. Zarwell was very clear in his testimony that the actual testing of the samples is conducted by lab technicians, not him. Based on his review of the data from the testing of Defendant's blood, Mr. Zarwell concluded that the sample contained 0.17 grams of alcohol per 100 milliliters of blood. The Court admitted Mr. Zarwell's testimony concerning the blood alcohol concentration over Defendant's objection, reserving the right, however, to later striking it. Defendant argues that in order for evidence of his blood alcohol concentration to be admissible, the Government must call as witnesses the lab technicians who actually conducted the testing.

In *Melendez–Diaz,* the Supreme Court was faced with the issue of whether state forensic analysts' "certificates of analysis" showing the results of the forensic analysis performed on the seized substances and prepared for use in a criminal prosecution are "testimonial" evidence subject to the demands of the Confrontation Clause as set forth in its earlier decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Court held that the certificates were testimonial statements, and the analysts were "witnesses" for purposes of the Sixth Amendment. Citing *Crawford v. Washington,* the Court stated: "Absent a showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to 'be confronted with' the analysts at trial." *Melendez–Diaz,* 129 S.Ct. at 2532 *citing Crawford,* 541 U.S. at 54, 124 S.Ct. 1354. The Court reiterated the non-exclusive class of statements which are testimonial in nature which included affidavits that declarants would reasonably expect to be used prosecutorially. *Id.* Because there was no showing that the analysts were unavailable to testify at trial and that Melendez–Diaz had a prior opportunity to cross-examine them, the Court held that the admission of the certificates violated his rights under the Confrontation Clause.

Defendant argues that under *Melendez–Diaz,* the Government was required to produce the testimony of the two lab technicians who actually conducted the tests which produced the raw data upon which Mr. Zarwell based his conclusion regarding the amount of alcohol present in Defendant's blood. The Government disagrees relying on the Fourth Circuit decision of *United States v. Washington,* 498 F.3d 225 (4th Cir.2007). In *Washington,* the defendant objected to the expert testimony of Dr. Barry Levine, Director of the Forensic Toxicology Laboratory of the Armed Forces Institute of Pathology, to prove that the blood sample taken from the defendant on the night of his arrest and tested at Dr. Levine's laboratory contained PCP and alcohol. The defendant argued that the raw data generated by the laboratory's diagnostic machines and relied on by Dr. Levine to give his testimony constituted testimonial hearsay statements of the laboratory technicians who operated the machines. He further argued that Dr. Levine did not participate in any of the testing on the blood sample and, in fact, never personally saw the blood sample. He then argued that these "reports" of raw data were hearsay "testimonial statements," as articulated in *Crawford v. Washington.* Because the technician-witnesses were not unavailable, Washington argued that it was a violation of his rights under the Confrontation Clause not to have the technicians in the courtroom and instead to admit their hearsay statements-i.e., the machine-generated reports of raw data-through Dr.

Levine's testimony. *Washington*, 498 F.3d at 227, 229. The Fourth Circuit disagreed holding that the data on which Dr. Levine relied (1) did not constitute the statements of the lab technicians; (2) were not hearsay statements; and (3) were not testimonial. *Id.* at 227.

Defendant reads the holding in *Melendez–Diaz* too broadly. *Melendez–Diaz* involved the admission into evidence of documents (the certificates of analysis) without any supporting live testimony. If the Government was seeking to admit evidence of Defendant's blood alcohol content through Mr. Zarwell's report alone, without the supporting testimony of Mr. Zarwell, then *Melendez–Diaz* would control and admission of the report would violate Defendant's right of confrontation absent a showing that Mr. Zarwell was unavailable to testify and that Defendant had a prior opportunity to cross-examine him. The Government, however, is not seeking to prove Defendant's blood alcohol concentration through Mr. Zarwell's report, but through the live testimony of Mr. Zarwell, subject to Defendant's right of cross-examination. The Government may introduce Mr. Zarwell's report to supplement his testimony, but the important point is that Mr. Zarwell's report may be admitted to supplement his testimony, but not in lieu of it.

The facts of this case are analogous to those presented in *Washington* and, accordingly, Mr. Zarwell's testimony is admissible and the absence of the testimony of the technicians does not violate Defendant's rights under the Confrontation Clause.

The precise issue presented here was squarely addressed in *Washington:*

> The most the technicians could have said was that the *printed data* from their chromatograph machines showed that the blood contained PCP and alcohol.
> The machine printout is the only source of the statement, and no *person* viewed a blood sample and concluded that it contained PCP and alcohol. Yet, the very same data that would have permitted the lab technicians to say that the blood contained PCP and alcohol were also seen and interpreted by Dr. Levine. Moreover, those data were the only basis upon which Dr. Levine stated in court that the blood sample contained PCP and alcohol. In short, the inculpating "statement"—that Washington's blood sample contained PCP and alcohol—was made by the machine on printed sheets, which were given to Dr. Levine. The technicians could neither have affirmed or denied *independently* that the blood contained PCP and alcohol because all the technicians could do was to refer to the raw data printed out by the machine. Thus, the statements to which Dr. Levine testified in court—the blood sample contained PCP and alcohol—did not come from the out-of-court technicians, and so there was no violation of the Confrontation Clause.

*Washington,* at 229–30. Here, Mr. Zarwell did not rely on statements by technicians that alcohol was contained in Defendant's blood and the only "statements" at issue did not come from "out-of-court" technicians but from printed data generated by the testing machines. *See Hamilton v. State,* 300 S.W.2d 14, 2009 WL 2762487 (Tex.App. Aug. 31, 2009) (holding that an expert witness who offers an opinion based in part on lab work performed by another does not violate the Confrontation Clause).

The Government points out that only four days after the Supreme Court issued its ruling in *Melendez–Diaz*, it denied *cert.* in *Washington.* On the same day, the Supreme Court granted cert., vacated and remanded several other cases in light of its

decision in *Melendez–Diaz*. The Government argues that this case is controlled by *Washington*. Defendant, on the other hand, argues that its position is bolstered by two of the cases in particular which were vacated and remanded by the Supreme Court. *See Crager v. Ohio*, —— U.S. ——, 129 S.Ct. 2856, 174 L.Ed.2d 598 (2009); *Barba v. California*, —— U.S. ——, 129 S.Ct. 2857, 174 L.Ed.2d 599 (2009). In *Crager*, the DNA expert who testified admitted that he was not the analyst who did the testing but that he "technically reviewed it." *State v. Crager*, 116 Ohio St.3d 369, 879 N.E.2d 745, 748 (2007). The expert testified that his "technical review" of the work of the analyst who actually performed the tests involved reviewing her notes, the DNA profiles she generated, her conclusions, and the final report which consisted of all the findings that she had within the case. *Id.* He further testified: "I actually technically reviewed that and made sure that the decisions or conclusions that she came up with were consistent and supported by [the] work that she did." *Id.* At this juncture, it is unknown what the future of the decision will be in light of the Supreme Court's remand. However, for purposes of the instant case, the Court finds that the facts are distinguishable from those presented here. As discussed above, Mr. Zarwell did not simply conduct a "technical review" of the findings and conclusions of the underlying testing individuals. He reviewed the raw data in order to form his own conclusions and findings. Indeed, in this case, the technicians did not generate their own conclusions but simply ran the tests which generated the data.

In *People v. Barba*, 2007 WL 4125230 (Cal.App. 2 Dist.2007), the lab director testified about results of tests performed by another analyst who was no longer employed by the lab. However, similar to *Crager*, it appears that the testifying expert testified about test *results* which were not his own conclusions or opinions. *Id.* at *7. Accordingly, to the extent Defendant asks the Court to draw any inference from the Supreme Court's decision to vacate and remand *Barba* and *Crager* (a proposition which would be dangerous in and of itself because it could be based only on this Court's speculation),[1] the Court finds those two cases distinguishable as the testifying expert in each did not draw his own conclusions based on machine generated data.

Finally, to the extent Defendant suggests that the presence of the technicians is required in order to cross-examine them regarding the reliability of the data, that concern was also addressed in *Washington* in which the Fourth Circuit stated "[a]ny concerns about the reliability of such machine generated information is addressed through the process of authentication not by hearsay or Confrontation Clause analysis." *Washington*, 498 F.3d at 231. Certainly, a technician who conducts lab tests could intentionally or unintentionally affect the data generated. The same could be said, however, for anyone handling the sample in the chain of custody, or anyone involved in the authenticity of the sample or anyone certifying the accuracy of the test devices. Yet, the Supreme Court noted that it was not holding that these potential witnesses must appear as part of the prosecution's case. *Melendez–Diaz*, 129 S.Ct. at 2532, n. 1.

---

1. In the same vein, this Court will not read the Supreme Court's *cert. denial* in *Washington* as an implicit approval of the Fourth Circuit's ruling in that case—only that the decision is left undisturbed and remains Fourth Circuit precedent on this issue.