**UNITED STATES of America,**

v.

**Anthony BOYD, Defendant.**

**No. 09 Cr. 347(JSR).**

United States District Court, S.D. New York.

March 1, 2010.

Janis Echenberg, U.S. Attorney's Office, SDNY, New York, NY, for United States of America.

## OPINION AND ORDER

JED S. RAKOFF, District Judge.

Defendant Anthony Boyd moves pursuant to Rule 33 of the Federal Rules of Criminal Procedure for a new trial, following his conviction by a jury on November 30, 2009 of 2 counts of bank robbery, 12 counts of armed bank robbery, and one count of escape. Although most of the issues raised in Boyd's motion—such as his contention that the Government's DNA expert gave "fraudulent" testimony, see Motion for A New Trial at 3—are both factually baseless and without legal merit, the Court construes his motion, drafted *pro se*,[1] to also re-raise the contention made by his assisting counsel at trial: that allowing the Government's DNA expert to testify, with the assistance of business records, to the results of preliminary steps performed by others earlier in the testing chain that formed part of the basis for the DNA expert's final analysis and conclusion, contravened Boyd's Sixth Amendment right to confrontation as most recently elucidated by the Supreme Court in *Melendez–Diaz v. Massachusetts*, —— U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009).

In *Melendez–Diaz*, the Court held that it was reversible error for the trial court to receive in evidence, over objection, the sworn certificates of state laboratory analysts that indicated the amount and type of narcotics seized by police from the defendant. The certificates, the Court held, were the functional equivalent of the in-court testimony that the analysts would have provided had they appeared at trial, and since, instead of live testimony, only the paper certificates were offered, the defendant was deprived of his constitutional right to meaningful cross-examination. *Id.* at 2532. *See Davis v. Washington*, 547 U.S. 813, 830, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); *Crawford v. Washington*, 541 U.S. 36, 51–52, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Rejecting concerns raised by the dissent, however, the majority in *Melendez–Diaz* did not hold that introduction of forensic evidence obliges the prosecution to call as a witness every individual whose testimony may be relevant to every aspect of the forensic chain. Rather, the Court left open such questions for further development. *Id.* at 2532 n. 1.

The instant case thus raises, in effect, one of the issues adverted to but left open by the majority in *Melendez–Diaz*: if (as here) the expert witness who takes the stand made the final determination as to the DNA match, and in so doing, relied on the results of tests performed by other members of the lab, does the failure to call the analysts who conducted the preliminary tests infringe the defendant's right under the Confrontation Clause?[2]

---

1. Very shortly before trial, Boyd, after running through three court-appointed attorneys, decided to represent himself *pro se* at trial. Nevertheless, the Court required his last appointed counsel, Andrew G. Patel, Esq., to assist Boyd at trial to the extent Boyd desired and, in fact, Boyd utilized Patel's services extensively, most particularly with respect to the *Melendez–Diaz* issue here raised. *See* Trial Transcript ("Tr."), 11/23/09, at 749, 756–803.

2. Other courts have acknowledged this potential issue left open by *Melendez–Diaz* but have not yet addressed it directly. *See, e.g., United States v. Rose*, 587 F.3d 695 (5th Cir.2009) (affirming defendant's conviction where the lab supervisor, who had reviewed the drug

The indictment in this case charged Boyd with committing a series of bank robberies, most of them armed, between December 2008 and July 2009. Although an eye-witness to one of the robberies identified Boyd as the culprit, in most cases the robber wore a mask that made him difficult to identify. The Government therefore relied on other evidence, most of which was quite strong, including Boyd's confession on March 25, 2009 to all but one of the robberies.[3] Among much else, the Government introduced as to two of the robberies DNA evidence that linked defendant to various articles—two beebee guns and some items of clothing—that were left at the scene of those two robberies. To introduce this evidence, the Government called as a witness the DNA analyst who initially prepared the evidence for testing and who personally handled the final step of a four-step process in DNA analysis, but who did not perform the other three steps.[4] Defendant, through his assisting counsel, contended that failure to call the analysts responsible for the earlier stages in the forensic process abridged his rights under the Sixth Amendment, and he moved to strike the expert witness's testimony. The Court concluded that, in the circumstances of this case, defendant's Confrontation Clause right to confront witnesses against him was satisfied, and therefore denied his motion.

■ Even DNA testing, though providing the "gold standard" for forensic testing, is not immune from error or falsification, see NATIONAL RESEARCH COUNCIL OF THE NATIONAL ACADEMIES, STRENGTHENING FORENSIC SCIENCE IN THE UNITED STATES: A PATH FORWARD 130–33 (2009), and, thus, even if the overall error rate in properly conducted DNA testing is extremely low, a defendant must be given, consistent with the mandates of the Constitution, a reasonable opportunity to determine through cross-examination if any such error or falsification is present in any DNA testing admitted into evidence. That opportunity cannot be boundless, however. If, on the one hand, a technician's role at any stage involves a material exercise of judgment or analysis, then a defendant's inability to cross-examine the witness on the results obtained from that exercise may rise to an injury of constitutional magnitude. But if, as here, the DNA testing in its preliminary stages requires the technician simply to perform largely mechanical or ministerial tasks, then, absent some reason to believe there was error or falsification, the need to call such a technician as a witness may not become a constitutional necessity.

■ Here, Boyd's assisting counsel speculated that each technician at each stage was called upon to engage in non-ministerial analyses and on that basis ar-

analysis report but did not perform the test, testified in court); *Pendergrass v. State,* 913 N.E.2d 703 (Ind.2009) (rejecting Sixth Amendment challenge where laboratory supervisor who had knowledge of processing testified but technician did not); *see also United States v. Darden,* 656 F.Supp.2d 560 (D.Md.2009) (upholding admission of toxicology report where supervising toxicologist who reviewed data and reported conclusion testified at trial); *Rector v. State,* 285 Ga. 714, 681 S.E.2d 157 (2009) (affirming conviction where trial court allowed toxicologist to testify about report prepared by another doctor as

harmless because it did not contribute to verdict).

**3.** The jury acquitted as to that robbery.

**4.** The four stages of DNA testing, according to the Government's witness, are "extraction," "quantitation," "amplification," and "determination of a DNA profile." *See* tr., 11/23/09 at 756–57. In addition to preparing the evidence to undergo these tests and personally handling the final step, the witness personally witnessed the technician performing the third step. Tr., 11/23/09, at 715, 730, 792.

gued that each step was critical to the final determination of a DNA profile that linked defendant to the crime and that defendant's Confrontation Clause rights were abridged when he was deprived of the opportunity to question each of the technicians personally. Tr., 11/24/09, at 913–14. But neither Boyd nor his assisting counsel sought a "Daubert" or other hearing on these contentions, nor adduced anything other than speculation to support these suggestions, and the expert's testimony at trial flatly refuted these claims.

Specifically, the DNA expert, although admitting that he did not personally witness several of the intervening steps, testified in detail about the routine procedures involved at each step and the ministerial nature of those steps, which he himself had performed thousands of time. *See* tr., 11/23/09, at 758–99, 845–49. The witness also testified that the process included several safeguards to enable the technicians to detect any errors that could potentially produce a false positive DNA match, and that none of those internal controls signaled any error in this case. *Id.* at 765, 774–75, 803. Finally, he testified that the reports of the intervening analysts were reviewed at the end of the process for technical accuracy. *Id.* at 713.

This testimony established, first, that the intervening steps were performed on the basis of established procedures that allowed little to no discretion; second, that the testifying expert was himself familiar with these intervening procedures and could be fully cross-examined as to their efficacy, accuracy, etc.; and, third, that the intervening technicians were, if anything, less able to respond to questions about the intervening procedures than the more expert witness who was actually called to the stand.[5]

Only the final stage of the DNA testing involved the type of analytical judgment for which a certificate would be an inadequate substitute for in-court testimony under the Sixth Amendment. But this was precisely where the Government provided live testimony in the form of the expert who performed this step. The DNA expert testified in some detail as to how he had determined that the DNA profiles from the firearms and clothing recovered from the two bank robberies matched one other, and thus came from a single source, and, furthermore, how he had determined that the DNA profile from that source matched the DNA profile derived from defendant's buccal swab.[6] *Id.* at 732–33, 741, 743, 744–46. The witness further provided the basis for his assertion that the DNA profile would be found in only one of one trillion individuals, *id.* at 730, 744, and that, because the DNA typing was duplicated and the results were confirmed, no false positive had been produced, *id.* at 851. The defendant was given ample opportunity to cross-examine this witness on his methodology and conclusions, and, thus, in the Court's view, the defendant's Sixth Amendment right to confrontation was preserved. *See* tr., 11/24/09, at 914–15.[7]

---

5. It should also be noted that defendant made no attempt to subpoena the analysts who performed tasks at the intermediary stages. Although this failure was not, in this Court's view, a waiver of defendant's Sixth Amendment argument, it may be a relevant part of the "mix" that the Court may consider in determining whether, as a practical matter, defendant was deprived of his Sixth Amendment right of confrontation.

6. On June 23, 2009, defendant consented to give a DNA sample (Gov't Ex. 1805). Tr., 11/20/09, at 614–15.

7. In his motion for a new trial, Boyd further contends that the DNA expert manipulated the data when he made a minor revision to the report in conformity with the laboratory's guidelines. *See* Def. Rule 33 Mot. at 2, Ex. B. However, the report itself indicates that the

The limits of *Melendez–Diaz* are still being developed. The Court here holds only that where the defendant had ample opportunity to confront the Government witness who undertook the final, critical stage of the DNA analysis, and where that witness was personally familiar with each of the prior steps, testified that the analysis included safeguards to verify that errors would not result in a false positive, and demonstrated that the prior steps were essentially mechanical in nature, the Confrontation Clause is satisfied.

Accordingly, the Court hereby denies defendant's motion pursuant to Rule 33 of the Federal Rules of Criminal Procedure for a new trial. The Clerk of the Court is directed to close document 32 on the docket of the case.

SO ORDERED.

changes did not affect any of the expert's conclusions, and the expert so testified as well. *See* tr., 11/23/09, at 825–26, 832. Boyd had an opportunity to cross-examine the witness on this aspect of the report and was unable to marshal any additional support for his far-fetched speculation. The Court concludes, therefore, that any contention that the DNA expert "manipulated" the data is meritless.