NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

v.

DUANE LEE THREADGILL, *Appellant.*

No. 1 CA-CR 18-0842
FILED 10-6-2020

Appeal from the Superior Court in Maricopa County
No.  CR2016-002129-001
The Honorable Susan M. Brnovich, Judge *Retired*
The Honorable Sam J. Myers, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

Branscomb Wilhite Law Firm, Laveen
By Monique Branscomb Wilhite
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge D. Steven Williams joined.

W E I N Z W E I G, Judge:

¶1  Duane Lee Threadgill appeals his felony convictions and sentences for kidnapping, armed robbery, first-degree burglary and possession of a narcotic drug. Because he has shown no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND[1]

¶2  A masked man scaled the front fence of a Phoenix home, clutching what one victim described as an "Uzi," before opening the fence door for two masked conspirators to join him. The masked trio entered the home and ordered two victims to the floor. One victim was struck "upside [the] head with a gun" before the intruders seized his cell phone and around $800.

¶3  Police were alerted to the ongoing home invasion and dispatched a helicopter. The intruders heard the helicopter overhead and fled on foot to a parked get-away car. The helicopter unit directed patrol units to the parked car. A patrol officer arrived on scene and approached the car with her weapon drawn. The officer successfully ordered one of the intruders to the ground; the others "took off running."

¶4  Police found a second intruder, Threadgill, hiding in a neighbor's yard. He was arrested without incident. The third intruder, Darquine Wilson, was found and arrested in a nearby home (the "Monterosa Home"), where officers also found the victim's cell phone and keys.

¶5  Officers recovered an AR-15 pistol on the ground outside the get-away car; and inside the car, officers discovered a Ruger P-95 handgun, two cell phones, and a small bag of cocaine and marijuana. Threadgill's fingerprints were found on the bag. His DNA was also found on one of the cellphones; that cell phone contained images of Threadgill and the AR-15

---

[1]  We recount the facts in the light most favorable to sustaining the jury's verdict. *State v. Gunches*, 225 Ariz. 22, 25, ¶ 14 (2010).

pistol, along with incriminating call logs and text messages between Threadgill and Wilson.

¶6        Threadgill and Wilson were indicted on several class 2 dangerous felonies, including two counts of kidnapping, two counts of armed robbery and one count of first-degree burglary. *See* A.R.S. §§ 13-105(13), -1304(A)(4), -1507(A), -1508(A), -1902(A), -1904(A)(1). Threadgill was also charged with possession of a narcotic drug. A.R.S. § 13-3408(A). The State alleged aggravating circumstances against Threadgill under A.R.S. § 13-701(D)(1), (2), (4) and (6).

¶7        Threadgill unsuccessfully moved to sever his trial from co-defendant Wilson's trial, but the court did sever the counts against Wilson involving the Monterosa Home. The jury found both defendants guilty as charged. The court sentenced Threadgill to a combination of concurrent and consecutive prison terms totaling 25 years, with appropriate presentence incarceration credit. Threadgill timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031 and -4033(A)(1) (2020).

## DISCUSSION

### A.        Confrontation Clause

¶8        Threadgill first contends the superior court erroneously admitted testimony from the State's forensic DNA analyst, Ms. Palmer, because the analyst relied on a DNA profile performed by another technician at the same laboratory, Ms. Duckworth, who did not testify at trial. Threadgill argues that Palmer's testimony about Duckworth's involvement was inadmissible hearsay and violated his rights under the Confrontation Clause of the Sixth Amendment. Although the court's admission of expert testimony is reviewed for an abuse of discretion, *State v. Snelling*, 225 Ariz. 182, 187, ¶ 18 (2010), rulings involving the Confrontation Clause are reviewed de novo, *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006).

¶9        We find no Confrontation Clause violation, having rejected similar arguments in similar cases. *See*, *e.g.*, *State v. Gomez,* 226 Ariz. 165 (2010) (rejecting similar Confrontation Clause challenge where analyst "formed her own opinions, based on a type of data normally relied upon by experts in her field."); *State v. Ortiz*, 238 Ariz. 329 (App. 2015). Although partially relying on Duckworth's work, Palmer performed her own analysis and "reached her own conclusions and was subject to cross-examination as to those conclusions." *Gomez*, 226 Ariz. at 170, ¶ 23. She detailed the five-

step procedure she used to match the DNA profiles from start to finish. *See id.* at 166, ¶ 4. Nor was her testimony a "mere conduit" to allow the admission of a non-testifying declarant. *See State v. Joseph*, 230 Ariz. 296, 299, ¶ 11 (2012). Threadgill also had a full and fair chance to cross-examine the DNA analyst.[2]

### B.    Severance

**¶10**        Threadgill next argues the trial court should have granted his motion to sever. We review the denial of a severance motion for an abuse of discretion. *State v. Murray*, 184 Ariz. 9, 25 (1995). To warrant reversal, Threadgill "must demonstrate compelling prejudice against which the trial court was unable to protect." *Id.* (quotation omitted).

**¶11**        Defendants may be tried together "if each defendant is charged with each alleged offense, or if the alleged offenses are part of an alleged common conspiracy, scheme, or plan, or are otherwise so closely connected that it would be difficult to separate proof of one from proof of the others." Ariz. R. Crim. P. 13.3(b). Still, the trial court must order a severance of defendants if necessary to promote a fair determination of any defendant's guilt or innocence of any offense. Ariz. R. Crim. P. 13.4(a).

**¶12**        Threadgill argues that evidence pertaining to Wilson improperly "rubbed-off" and created a negative impression of Threadgill for the jury. Specifically, Threadgill refers to testimony describing the Monterosa Home as a "crime scene," and the homeowner's statement to police that someone "broke in."[3] Based on this evidence, Threadgill claims his convictions were "most likely based on his association with [Wilson.]"

---

[2]        Threadgill also suggests he was denied the right to confront one victim who never testified at trial, but does not articulate or develop the argument and cites no legal authority. It is therefore waived. Ariz. R. Crim. P. 31.10(a)(7)(A). Even so, Threadgill's claim is meritless because the victim's hearsay statements were not admitted at trial. *See Joseph*, 230 Ariz. at 299, ¶ 11 ("But here, no testimonial 'statement' by [the non-testifying witness] was admitted into evidence.").

[3]        Despite Threadgill's assertions to the contrary, the jury did not hear evidence that the homeowner told police officers he "escaped" after the intruder entered the home, nor was the jury otherwise "exposed to all the facts of the second home invasion."

¶13 Threadgill's speculation aside, he shows no prejudice resulting from the joint trial. Although the jury heard references to a crime scene at the Monterosa Home, the testimony did not imply that Threadgill was involved. And on the "break[] in[]" at the Monterosa Home, the trial court ordered the evidence stricken and instructed the jury to disregard it. Further, during closing instructions, the court generally admonished the jury to "consider the charges against each Defendant separately [because] [e]ach Defendant is entitled to have a jury determine the verdict as to each of the crimes charged based on that Defendant's own conduct and from the evidence that applies to that Defendant, as if the Defendant were being tried alone." The jury is presumed to have followed the instructions and therefore convicted Threadgill based on the evidence relating to his own conduct. *See Murray*, 184 Ariz. at 25. The court's denial of Threadgill's severance motion was not an abuse of discretion.[4]

### C. Sufficiency of the Evidence

¶14 Threadgill next challenges the sufficiency of the evidence supporting his conviction for possession of a narcotic drug, which here required proof that he knowingly possessed cocaine. *See* A.R.S. §§ 13-3401(5), (20)(bb), -3408(A)(1). He argues the court should have granted his Rule 20 motion for acquittal on this charge because the State presented no evidence of actual or constructive possession other than his fingerprint on the bag of cocaine.

¶15 We review de novo the court's denial of a Rule 20 motion, *State v. Goudeau*, 239 Ariz. 421, 461, ¶ 168 (2016), and affirm the conviction if substantial evidence supports the jury's verdict, *State v. Hausner*, 230 Ariz. 60, 75, ¶ 50 (2012); *see* Ariz. R. Crim. P. 20(a)(1). "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of [the] defendant's guilt beyond a reasonable doubt." *State v. Spears*, 184 Ariz. 277, 290 (1996).

¶16 Substantial evidence supports Threadgill's conviction. Although there is "no way to determine if the cocaine was in the bag when [his] [finger]print was made," possession may be proven by circumstantial evidence, *State v. Gonsalves*, 231 Ariz. 521, 523, ¶ 10 (App. 2013), and we resolve all reasonable inferences against Threadgill, *Goudeau*, 239 Ariz. at 461, ¶ 169. The jury could also infer that Threadgill had cocaine based on

---

[4] Threadgill also argues the superior court erred by denying his requests for a mistrial after the jury heard "prejudicial information" about the Monterosa Home. We find no error for these same reasons.

the bag's proximity to other evidence connected to Threadgill. *See State v. Gill*, 248 Ariz. 274, ¶ 8 (App. 2020) (drugs and paraphernalia in vicinity of defendant's belongings was substantial evidence from which a jury could find that he possessed the drugs).

### D. Sentencing

**¶17** Threadgill last asserts the court erred in running his sentences for kidnapping, armed robbery and first-degree burglary as to one victim (Counts 2, 4 and 5) consecutive to his sentences for kidnapping and armed robbery as to another victim (Counts 1 and 3). He claims that A.R.S. § 13-116 prohibits consecutive sentences here because the offenses "occurred simultaneously" and arose out of a single act. "We review de novo a trial court's decision to impose consecutive sentences in accordance with A.R.S. § 13-116." *State v. Urquidez*, 213 Ariz. 50, 52, ¶ 6 (App. 2006).

**¶18** We reject the argument. Consecutive sentences are proper where multiple convictions arise from a single act that harms two or more victims. *State v. Riley*, 196 Ariz. 40, 47, ¶ 21 (App. 1999). The trial evidence, as reflected in the verdicts, establishes that the homeowner and his guest were victims in the home invasion.

### CONCLUSION

**¶19** We affirm Threadgill's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA