393 P.3d 159

The STATE of Arizona, Appellee,

v.

Fuller Wayne SMITH, Appellant.

No. 2 CA-CR 2015-0357

Court of Appeals of Arizona,
Division 2.

Filed March 13, 2017

Mark Brnovich, Arizona Attorney General, Joseph T. Maziarz, Chief Counsel, Phoenix, By Kathryn A. Damstra, Assistant Attorney General, Tucson, Counsel for Appellee

Piccarreta Davis Keenan Fidel, PC, Tucson, By Michael L. Piccarreta and Jefferson Keenan, Counsel for Appellant

Presiding Judge Howard authored the opinion of the Court, in which Chief Judge Eckerstrom and Judge Vásquez concurred.

## OPINION

HOWARD, Presiding Judge:

¶1 Following a jury trial, Fuller Smith was convicted of two counts of molestation of a child and two counts of sexual conduct with a minor under fifteen. On appeal, Smith argues a DNA[1] expert's testimony as to the results of a saliva test violated his Confrontation Clause rights, the trial court violated his due process rights by denying his motion to dismiss with prejudice after two previous trials resulted in mistrials, and that insufficient evidence supported the jury's verdicts. Because Smith's Confrontation Clause rights were violated, we vacate Smith's convictions and sentences and remand.

### Factual and Procedural Background

¶2 We view the evidence in the light most favorable to upholding the jury's verdicts. State v. Mangum, 214 Ariz. 165, ¶3, 150 P.3d 252, 253 (App. 2007). N.S. is Smith's granddaughter and was eight years old at the time of these incidents. In October 2011, she was staying at his house and, after she went to bed, Smith removed her pants and underwear, rubbed her genitals with his fingers, and licked her genitals. He then put her pants and underwear back on and left the room. Although N.S. was awake during this encounter, she pretended to be asleep.

¶3 The following afternoon, Smith told N.S. to take a nap even though she did not typically take naps in the afternoon. Shortly thereafter, Smith entered N.S.'s room, removed her pants and underwear, rubbed and licked her genitals, put her pants and underwear back on and left the room. She again pretended to remain asleep. Approximately two weeks later, N.S. told her parents what Smith had done. Smith's DNA was found on the inner and outer crotch areas of the un-

1. Deoxyribonucleic acid.

derwear N.S. had been wearing while she stayed at Smith's house.

¶ 4 The state charged Smith with two counts each of sexual conduct with a minor under fifteen and molestation of a child under fifteen. During Smith's first trial, the trial court declared a mistrial after N.S.'s mother testified to other acts of sexual misconduct that Smith had not been charged with and which had been precluded. Smith's second trial also resulted in a mistrial after the jury was unable to reach a verdict. The jury in Smith's third trial found him guilty on all four counts as described above.

¶ 5 As to the molestation of a child charges, the trial court sentenced Smith to consecutive terms totaling twenty years. On each of the sexual conduct with a minor charges, the court sentenced Smith to a term of life imprisonment without the possibility of release for thirty-five years, to be run consecutively to each other and the molestation charges. We have jurisdiction over Smith's timely appeal pursuant to A.R.S. §§ 12–120.21(A)(1) and 13–4033(A)(1).

### Confrontation Clause

■ ¶ 6 Smith argues the trial court erred by refusing to preclude a portion of the state's DNA expert's testimony because it violated his Confrontation Clause rights under the United States and Arizona constitutions. U.S. Const. amend. VI; Ariz. Const. art. II, § 24. "[W]e review de novo challenges to admissibility based on the Confrontation Clause." *State v. Bennett*, 216 Ariz. 15, ¶ 4, 162 P.3d 654, 656 (App. 2007).

¶ 7 At trial, the state introduced the testimony and written reports of DNA analyst Brianna Smalling. Smith contends the portion of her report and testimony involving the "RSID saliva test," which her laboratory conducted on a portion of N.S.'s underwear, was impermissible testimonial hearsay. The test indicates the presence of alpha amylase, which is a protein found in certain bodily fluids, including saliva. Kim Lang, another technician at the same laboratory, conducted the saliva test [2] on the inner and outer crotch

areas of N.S.'s underwear and submitted the results to Smalling. Smalling included those results in her report, but did not participate in the testing and did not conduct any independent analysis of the results.

■ ¶ 8 The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also* Ariz. Const. art. II, § 24 ("In criminal prosecutions, the accused shall have the right ... to meet the witnesses against him face to face...."). "[T]estimonial hearsay," although not the sole concern of the Confrontation Clause, is nonetheless its "primary object." *Crawford v. Washington*, 541 U.S. 36, 53, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Testimonial hearsay is "out-of-court statements having the primary purpose of accusing a targeted individual of engaging in criminal conduct" and which involves "formalized statements such as affidavits, depositions, prior testimony, or confessions." *Williams v. Illinois*, 567 U.S. 50, 132 S.Ct. 2221, 2242, 183 L.Ed.2d 89 (2012). Documents "created solely for an 'evidentiary purpose' ... made in the aid of a police investigation, rank[ ] as testimonial." *Bullcoming v. New Mexico*, 564 U.S. 647, 664, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), *quoting Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 311, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009).

¶ 9 In *Bullcoming*, the Court discussed the type of forensic evidence that falls within the Confrontation Clause purview. In that case, the state had introduced a forensic report certifying the defendant's blood-alcohol concentration "through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." 564 U.S. at 651–52, 131 S.Ct. 2705. The Court found such "surrogate testimony" violated the Confrontation Clause, and the defendant had a right to confront the scientist who had conducted the test and authored the report. *Id.* at 652, 131 S.Ct. 2705.

¶ 10 We agree with Smith that this case is analogous to *Bullcoming* and that Smalling

**2.** Although the test shows the presence of alpha amylase and not definitively saliva, we refer to it as the "saliva test" because that is how the parties and witnesses referred to it below.

acted only as a "conduit for another non-testifying expert's opinion." *State v. Gomez*, 226 Ariz. 165, ¶ 22, 244 P.3d 1163, 1168 (2010), *quoting State v. Snelling*, 225 Ariz. 182, ¶ 19, 236 P.3d 409, 414 (2010). Like the testifying expert in *Bullcoming*, Smalling "played no role in producing the [test results,] ... did not observe any portion of [Lang's] conduct of the testing" and did not offer an "independent, expert opinion about" whether alpha amylase was found on N.S.'s underwear. 564 U.S. at 673, 131 S.Ct. 2705 (Sotomayor, J., concurring).

¶ 11 Additionally, the Pima County Sheriff's office provided the underwear to the laboratory, informed them of the factual basis of N.S.'s allegations, and requested the saliva test. The laboratory thus was aware the testing was being used "solely for an 'evidentiary purpose' ... made in aid of a police investigation." *Bullcoming*, 564 U.S. at 664, 131 S.Ct. 2705, *quoting Melendez–Diaz*, 557 U.S. at 311, 129 S.Ct. 2527.

¶ 12 Finally, the saliva test results were offered for the truth of the matter asserted: that saliva had been found on N.S.'s underwear. But they were introduced through the testimony of an expert who did not participate in the testing or come to any independent conclusion about the results. Lang, as the technician who conducted the test and generated the result, was the witness Smith had the right to confront at trial under the Sixth Amendment. *Melendez–Diaz*, 557 U.S. at 311, 129 S.Ct. 2527.

¶ 13 At oral argument, the state conceded the saliva test was a separate process from the creation of the DNA profiles used by Smalling to compare Smith's DNA with that found on N.S.'s underwear.[3] Smalling did not reach any independent conclusions as to whether saliva was found on N.S.'s underwear. Thus, while "[t]he DNA profiles had no evidentiary value until they were compared

and matched by" Smalling, the saliva test result's evidentiary impact arose once the test was completed by Lang. *State v. Ortiz*, 238 Ariz. 329, ¶ 59, 360 P.3d 125, 138 (App. 2015). By relying on Smalling to relay Lang's test results, the state violated Smith's Sixth Amendment right to confront the witnesses against him.

■ ¶ 14 Having determined that Smalling's testimony violated Smith's Confrontation Clause rights, we next turn to whether the error was harmless. *State v. Bass*, 198 Ariz. 571, ¶ 39, 12 P.3d 796, 805 (2000). The state bears "the burden of convincing us that error is harmless." *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993). We must be satisfied beyond a reasonable doubt that the erroneously admitted evidence "had no influence on the jury's judgment." *Id.* "The inquiry ... is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *State v. Valverde*, 220 Ariz. 582, ¶ 11, 208 P.3d 233, 236 (2009), *quoting State v. Anthony*, 218 Ariz. 439, ¶ 39, 189 P.3d 366, 373 (2008).

¶ 15 The state attempts to downplay the impact of the evidence, arguing that any error in admitting the test results was harmless because the "results alone do not in any way connect the presence of" alpha amylase to Smith and the jury was told the result could also indicate the presence of other substances such as feces or urine. It points out that "one would expect a child's dirty underwear to have traces of ... feces on them, and produce a positive test result, especially, when, as here, the pediatric forensic nurse testified that [N.S.] had hygiene problems."

¶ 16 But the prosecution made the saliva test results an important part of its presen-

---

3. In its opening brief, the state argued the saliva test results fell within an exception to traditional hearsay rules, which allow an expert to "testify to otherwise inadmissible evidence, including the substance of a non-testifying expert's analysis, if such evidence forms the basis of the expert's opinion and is reasonably relied upon by experts in the field." *State ex rel. Montgomery v. Karp*, 236 Ariz. 120, ¶ 13, 336 P.3d 753, 757 (App.

2014); *see also Williams*, 567 U.S. at 56, 72, 132 S.Ct. at 2227, 2236 (no Confrontation Clause violation where testifying analyst relies upon DNA profile generated by third-party of which she lacked personal knowledge of testing procedures to conclude profile matched defendant); *State v. Joseph*, 230 Ariz. 296, ¶¶ 8, 10, 283 P.3d 27, 29 (2012); *State v. Gomez*, 226 Ariz. 165, ¶¶ 22–23, 244 P.3d 1163, 1167–68 (2010).

tation below, while minimizing the test's limitations. The first page of Smalling's initial reports lists the three areas of N.S.'s underwear her laboratory was asked to test: the outer crotch area, the inner crotch area, and the waistband. The first sentence under the headings for the inner and outer crotch areas reads, "The testing for saliva was positive." The following page, under the "Notes" heading, reads "[h]uman salivary a-amylase, a constituent of human saliva, can also be found in ... feces and breast milk ... [and this] must be considered when interpreting RSID®–Saliva results."[4] Notably, neither the term "a-amylase" or "RSID®–Saliva" appear on the first page of the report. The report, on its own, does not clearly inform the jury that the statement, "The testing was positive for saliva" in fact meant the testing was positive for alpha amylase and not necessarily saliva.

¶ 17 Smalling's testimony was similarly imprecise. She continually stated the tests on the inner and outer crotch area were positive for "saliva," and described the test as one for "a protein inside your saliva that breaks down starches." When asked whether technicians could identify the source of the DNA profiles, she replied they could not but "[t]he fact that we got a positive saliva result is a good indication." Furthermore, although she explained that "feces and breast milk can cause a positive result in the test," both Smalling and the attorneys referred to it as a "saliva test" multiple times throughout her testimony. Her testimony thus left the overwhelming impression her laboratory had found saliva on N.S.'s underwear.[5]

¶ 18 Additionally, the state introduced, but did not admit into evidence, a report during its cross-examination of Smith's DNA expert purporting to show the saliva test showed positive only in the presence of saliva, breast milk, or the fecal matter of a baby who had fed on breast milk. By actively disputing that expert's opinion on the interpretation of the test results, the state demonstrated it had a strong belief as to what the test results showed and it wished the jury to believe the same. This also served to reinforce the impression left by the report and Smalling's testimony that the test did, in fact, show that saliva was found on N.S.'s underwear.

¶ 19 During closing arguments, Smith contended that his DNA could have gotten onto the victim's underwear in any number of innocent ways and pointed out the saliva test "comes up positive for other things." The prosecutor, in his closing and rebuttal arguments, referred to the test results several times as "positive for saliva," characterized them as a part of "the DNA evidence," and asked the jury to consider the DNA evidence along with the test results "significant corroborating evidence" of N.S.'s story. Accordingly, the state sought to demonstrate that the test did, in fact, show the presence of saliva, proving Smith had licked the victim, and could not be interpreted in any other reasonable way.

¶ 20 Contrary to the state's position on appeal that the test results were essentially meaningless, it assigned great meaning to the results at trial as shown through its efforts to establish they definitively indicated the presence of saliva. Demonstrating that saliva was found on N.S.'s underwear directly supported a disputed fact the state bore the burden of proving: that Smith licked N.S.'s genitals, as alleged in the indictment. *See Bass*, 198 Ariz. 571, ¶ 40, 12 P.3d at 806. Because Smith's DNA could have been transferred to the victim's underwear in innocent ways, the DNA alone did not directly support that inference. The state's continued emphasis on the test and its results both highlighted those results and exacerbated the effect of their erroneous admission. *See Anthony*, 218 Ariz. 439, ¶ 40, 189 P.3d at 373 (erroneous introduction of other act evidence not harmless based, in part, on state's reliance on that

---

4. At trial, Smalling testified that after she had written this report, her laboratory concluded the saliva test could not, in fact, indicate the presence of urine.

5. We do not mean to suggest that Smalling intentionally misled the jury on the meaning of the saliva test results. She stated her laboratory's protocol was to use the term "saliva" in reference to the test results. Indeed, the test itself uses "saliva" in the name. That testimony, however, only further served to strengthen the state's contention that the positive test results did indicate the presence of saliva.

evidence); *State v. Romero*, 240 Ariz. 503, ¶ 20, 381 P.3d 297, 305 (App. 2016) (state's "emphasis" on improper evidence proper consideration in harmless error analysis if it "exacerbate[s] the error"). Furthermore, we note that the prior hung jury favored acquittal 9–3, which suggests the remaining evidence was not sufficiently "overwhelming" to ensure a guilty verdict. *See Romero*, 240 Ariz. 503, ¶ 13, 381 P.3d at 303.

■ ¶ 21 We emphasize the state, not Smith, bears the burden of showing the error was harmless beyond a reasonable doubt. *See Bible*, 175 Ariz. at 588, 858 P.2d at 1191; *see also Anthony*, 218 Ariz. 439, ¶ 41, 189 P.3d at 374 (noting difference between sufficiency-of-the-evidence and harmless error review). In light of the " 'stringent concepts' " surrounding our review, the state has not met its burden of demonstrating the jury verdicts were "surely unattributable" to its emphasis of and reliance on the improperly admitted saliva test results. *Anthony*, 218 Ariz. 439, ¶¶ 39, 42, 189 P.3d at 373, *quoting Bible*, 175 Ariz. at 588, 858 P.2d at 1191.[6]

## Due Process Violation

■ ¶ 22 Smith additionally argues the trial court's denial of his motion to dismiss his prosecution violated his due process rights.[7] He contends that, relying on *State v. Huffman*, 222 Ariz. 416, 215 P.3d 390 (App. 2009), the court did not consider the proper factors in making its ruling and thus abused its discretion. We review a court's denial of a motion to dismiss criminal charges for an abuse of discretion.[8] *Mangum*, 214 Ariz. 165, ¶ 6, 150 P.3d at 254. A court abuses its discretion if it "misapplies the law or exercis-

es its discretion based on incorrect legal principles." *State v. Slover*, 220 Ariz. 239, ¶ 4, 204 P.3d 1088, 1091 (App. 2009).

¶ 23 Before his third trial, Smith moved to dismiss the charges against him with prejudice based on due process grounds. He contended the third trial would likely result in a hung jury, and pointed to the fact that it was the state's witness that caused the first mistrial, the hung jury favored acquittal 9–3, and the trials had put considerable emotional and financial stress on Smith. The trial court denied the motion, noting that "in only one of the two previous trials was the case submitted to a jury" and "[t]he mistrial in the first trial occurred on the second day of trial."

■ ¶ 24 In considering a motion to dismiss under these circumstances, the trial court must consider "the relevant competing interests of the defendant and the state in light of the particular circumstances of each case." *Huffman*, 222 Ariz. 416, ¶ 15, 215 P.3d at 396. This balancing test "is wholly consistent with and satisfies due process requirements." *Id.* ¶ 12. The court is granted broad discretion in its ruling because it has a "more immediate grasp of all the facts of the case" and ability to observe the parties, lawyers and witnesses. *Id.* ¶ 18, *quoting State v. Winegar*, 147 Ariz. 440, 445, 711 P.2d 579, 584 (1985). This court will presume that a trial court considered the relevant interests unless its decision is "manifestly unreasonable or exercised on untenable grounds or for untenable reasons." *Id.*, *quoting State v. Sandoval*, 175 Ariz. 343, 347, 857 P.2d 395, 399 (App. 1993).

6. At oral argument, the parties discussed whether this court should vacate all of Smith's convictions, when the saliva test results were only necessary to prove the two sexual conduct with a minor charges since those were based on oral contact. The state conceded, however, that because the acts of rubbing and licking N.S.'s genitals occurred within moments of each other on each occasion, and the presentation of the evidence interwove the events below, if we vacated the sexual conduct convictions, then vacating all four counts was appropriate.

7. If Smith prevails on this claim, the state would be precluded from retrying him. *See Humble v. Superior Court*, 179 Ariz. 409, 416–17, 880 P.2d

629, 636–37 (App. 1993). Thus, we address this issue despite already concluding the Confrontation Clause violation was not harmless and vacating Smith's convictions and sentences on that ground.

8. The state argues that because Smith did not file a special action after the denial of his motion to dismiss, he has waived the issue on appeal. For the same reasons expressed in *State v. Felix*, 214 Ariz. 110, ¶¶ 8, 10, 149 P.3d 488, 489–90 (App. 2006), in which we found that a defendant's failure to request special action review on a double jeopardy claim does not preclude his ability to raise that claim on review, we reject the state's contention here.

¶ 25 The trial court in this case presided over both of Smith's previous trials. It was thus familiar with the factual and procedural background, the parties, lawyers, witnesses, and evidence. As it noted, only one of Smith's previous trials had resulted in a hung jury and the other was declared a mistrial on the second day of an expected six-day trial. Considering the "seriousness and circumstances" of Smith's alleged offenses—sexual contact and molestation of his eight-year-old granddaughter—and resulting harm, the court could reasonably conclude the state's interest in the prosecution outweighed the emotional and financial burden the successive trials placed on Smith. *Id.* ¶ 14, *quoting State v. Sauve*, 164 Vt. 134, 666 A.2d 1164, 1168 (1995).

¶ 26 Additionally, when there has been only one trial that reached the jury, during which the trial court denied the defendant's motion for judgment of acquittal based on sufficiency of the evidence, "there is a reasonable possibility of conviction upon a second trial." *Sauve*, 666 A.2d at 1170. We cannot say the court abused its discretion in denying Smith's motion to dismiss with prejudice following only one hung jury. *See id.* (abuse of discretion to dismiss following "only one trial" in light of "the seriousness of the charged offense, the absence of any prosecutorial misconduct, and the lack of any showing of prejudice that would result to defendant from retrial"); *cf. Huffman*, 222 Ariz. 416, ¶¶ 1, 18, 215 P.3d at 392, 397 (denial of motion to dismiss with prejudice following two hung juries not abuse of discretion); *State v. Moriwake*, 65 Haw. 47, 647 P.2d 705, 713 (1982) (dismissal with prejudice

not abuse of discretion after two hung juries following "two full, nearly identical trials"); *State v. Witt*, 572 S.W.2d 913, 917 (Tenn. 1978) (prejudicial dismissal appropriate only where "repeated trials, free of prejudicial error, have resulted in genuinely deadlocked juries ... and that probability of continued hung juries is great").

¶ 27 Smith also argues the trial court was required to address explicitly certain non-exclusive factors listed in *Huffman* in its ruling and its failure to do so constitutes legal error. 222 Ariz. 416, ¶ 14, 215 P.3d at 395–96; *see also Slover*, 220 Ariz. 239, ¶ 4, 204 P.3d at 1091. The court, however, is not required to state its reasons for denying a motion to dismiss on the record. *Huffman*, 222 Ariz. 416, ¶ 18, 215 P.3d at 397. Smith presented the court with his reasons and legal authority for seeking the dismissal[9] and we presume the court, being familiar with "the particular circumstances of [the] case" and, as Smith acknowledges, "intimately familiar" with the factors listed in *Huffman*, considered the necessary interests and concluded the prosecution was not unfair. *See id.* ¶ 15. We reject Smith's argument on this point.

### Sufficiency of the Evidence

¶ 28 Smith additionally argues the trial court erred in denying his motion for judgment of acquittal made pursuant to Rule 20, Ariz. R. Crim. P., because insufficient evidence supported the jury's verdicts.[10] "We review the denial of a Rule 20 motion de

---

9. The state did not file a response to Smith's motion to dismiss. Smith contends that failure requires us to remand this case to the trial court because the proper procedure was not followed, relying on our statement in *Huffman* that we believed the "appropriate procedure for motions to dismiss due to successive prosecutions after hung juries" is that "the state should file a response detailing the circumstances it believes establish that a successive trial is in the interests of justice." 222 Ariz. 416, n.6, 215 P.3d at 397 n.6. First, we note there had been only one hung jury, unlike the situation in *Huffman*. *Id.* ¶ 1. Second, although that may be the preferred procedure, the state is not required to file a response under the rules of procedure and Smith has not explained why the court in this case was unable

to independently consider whether a successive trial after one hung jury was in the interests of justice. *See* Ariz. R. Crim. P. 16.6. We thus reject Smith's argument on this issue.

10. Although we have concluded the Confrontation Clause violation in this case was not harmless beyond a reasonable doubt, we address Smith's claim that insufficient evidence supported his convictions because were we to find the evidence was insufficient, the prohibition against double jeopardy would bar the state from retrying Smith. *State v. Tucker*, 231 Ariz. 125, ¶ 25, 290 P.3d 1248, 1260–61 (App. 2012); *Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

novo." *State v. Tucker*, 231 Ariz. 125, ¶ 27, 290 P.3d 1248, 1261 (App. 2012).

¶ 29 In our review, we view the evidence in the light most favorable to affirming the jury's verdicts and "will reverse only if there is a complete absence of 'substantial evidence' to support the conviction." *State v. Ramsey*, 211 Ariz. 529, ¶ 40, 124 P.3d 756, 769 (App. 2005), *quoting State v. Sullivan*, 187 Ariz. 599, 603, 931 P.2d 1109, 1113 (App. 1996). Substantial evidence is evidence that reasonable jurors "could accept as sufficient to support a guilty verdict beyond a reasonable doubt." *State v. Davolt*, 207 Ariz. 191, ¶ 87, 84 P.3d 456, 477 (2004). We consider evidence substantial if reasonable persons could differ on whether it establishes a fact in issue. *Id.*

¶ 30 In order to show Smith molested N.S., the state was required to show, as relevant here, he "intentionally or knowingly" engaged in "direct or indirect touching, fondling or manipulat[ion] of any part of the genitals." A.R.S. §§ 13–1410, 13–1401(A)(3). On the sexual conduct with a minor charge, the state had to show Smith "intentionally or knowingly engag[ed] in ... oral sexual contact" with N.S. A.R.S. § 13–1405(A).

¶ 31 At trial, N.S. testified that while she was pretending to sleep, on two separate occasions, Smith removed her pants and underwear, rubbed her genitals with his fingers and licked her genitals. Smith's DNA was found on the inner and outer crotch areas of the underwear N.S. was wearing at that time. Based on this evidence, we cannot say there was "no substantial evidence to warrant a conviction." Ariz. R. Crim. P. 20(a); *see also State v. Schlenker*, 26 Ariz.App. 401, 403–04, 549 P.2d 181, 183–84 (1976) (conviction for child molestation may be upheld even if based on the uncorroborated testimony of the victim "unless her story is physically impossible or so incredible that no reasonable [person] could believe it"). The trial court therefore did not err in denying Smith's Rule 20 motion.

¶ 32 Smith argues, however, he presented sufficient evidence to show that "N.S.'s accusations were untrue [and] that [N.S.'s mother] was overly sensitive about the possibility of her children being molested." This testimony, however, does not render the state's evidence insufficient to support the jury's verdict. Even were the jury to believe that N.S.'s mother was "overly sensitive," that do not negate N.S.'s testimony as to what happened. Smith has not pointed to anything in the record that would show N.S.'s story was "physically impossible or so incredible that no reasonable [person] could believe it." *See Schlenker*, 26 Ariz.App. at 403–04, 549 P.2d at 183–84.

¶ 33 Smith also points to contradictions in N.S.'s testimony as to the exact times the incidents occurred and whether she attempted to wake her brother up during the nighttime incident. He also relies on contradictions between N.S. and her parents as to whether they had asked her about oral contact before she divulged that information to the forensic interviewer as evidence "that N.S.'s 'accusations' actually stemmed from her parents' suggestive questioning." However, "inconsistencies in witness testimony go not to the admissibility of testimony, but rather to the credibility of the witnesses and the weight to be accorded to the evidence, which are issues for the jury to resolve." *State v. Rivera*, 210 Ariz. 188, ¶ 20, 109 P.3d 83, 87 (2005).

¶ 34 Smith also argues the most reasonable inference to draw from the saliva test results is that the test detected the presence of fecal matter and not saliva. Even without the saliva test, however, the state presented sufficient evidence to support the jury's verdicts. *See Schlenker*, 26 Ariz.App. at 403–04, 549 P.2d at 183–84. And although he argues there are "innocent explanations" for why Smith's DNA was found on N.S.'s underwear, "the State is not required to disprove 'every conceivable hypothesis of innocence when guilt has been established by circumstantial evidence.' " *State v. Fischer*, 219 Ariz. 408, ¶ 43, 199 P.3d 663, 674 (App. 2008), *quoting State v. Nash*, 143 Ariz. 392, 404, 694 P.2d 222, 234 (1985). We cannot say the trial court erred in denying Smith's motion.[11]

11. Because we are vacating Smith's convictions and sentences and remanding for a new trial, we

### Disposition

¶ 35 We vacate Smith's convictions and sentences and remand the case for a new trial.

do not address Smith's other claims on appeal.