NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

PEDRO FABIAN MONTOYA, *Appellant*.

No. 1 CA-CR 18-0638
FILED 7-2-2019

Appeal from the Superior Court in Yuma County
No. S1400CR201700361
The Honorable David M. Haws, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Eugene Marquez
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge David D. Weinzweig joined.

---

**P E R K I N S**, Judge:

¶1         Pedro Fabian Montoya appeals his convictions and resulting sentences for possession of a dangerous drug for sale and possession of drug paraphernalia. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2         "We view the facts and all reasonable inferences therefrom in the light most favorable to sustaining the convictions." *State v. Powers*, 200 Ariz. 123, 124, ¶ 2 (App. 2001). Montoya was driving a pickup truck in Yuma one night when a police officer saw him pass a stop sign and enter an intersection before stopping the truck. The officer followed Montoya to the next intersection, which Montoya again entered before stopping. The officer turned on his emergency lights, but Montoya did not pull over until the officer turned on his siren. After talking to Montoya and seeing that he "was very agitated," the officer called for backup, including a drug-sniffing dog. The officer then began running Montoya's license and checking the names given to him by the passengers.

¶3         The dog arrived during the traffic stop and soon alerted to the presence of contraband. Officers searched the truck and found a "crystal-like substance," a digital scale, and two pills in a crumpled piece of paper. They then arrested Montoya.

¶4         The State indicted Montoya for: possession of a dangerous drug for sale, methamphetamine, a class 2 felony; possession of a dangerous drug, alprazolam, a class 4 felony; and possession of drug paraphernalia, methamphetamine, a class 6 felony. The State later amended the indictment to allege three prior felony convictions. Finally, the State alleged as aggravators that Montoya committed the offense with the expectation of pecuniary gain and that Montoya had been convicted of two prior felonies within the preceding 10 years.

¶5            The court held a jury trial on May 29, May 31, and June 1, 2018. Raina Ramirez, a forensic scientist with the Department of Public Safety's crime laboratory in Tucson, testified that she did not test the substance herself, but did review the results of the tests performed at her lab. She further testified in detail about the tests run on the substance and her training, experience, and qualifications. She stated that all samples tested at her lab go through two levels of checks, a "technical review," and an "administrative review." Ramirez admitted that she had not checked the substance at issue but reviewed the notes and paperwork of the scientist who did. In her professional opinion, the substance was 5.94 grams of methamphetamine. Montoya's trial attorney objected to Ramirez's testimony because she was not the scientist who tested the substance; the trial court admitted her testimony over the objection.

¶6            The court then heard from Yuma police officer Jonathan Castlegrante, who testified about pulling the truck over, searching it, and arresting Montoya. He also testified that digital scales and quantities larger than one gram indicate the methamphetamine is "not for personal use." He stated that when he arrested Montoya, the methamphetamine was in "larger shards, glass-like shards," which also indicated the drug was for sale, not personal use. Officer Stephanie Malone of the Yuma Police Department testified about the search she conducted with her drug-sniffing dog Raico.

¶7            After the State rested its case, Montoya moved to dismiss the count for alprazolam possession, which the court granted because the State failed to offer substantial evidence that the pills were, in fact, alprazolam. *See* Ariz. R. Crim. P. 20.

¶8            A passenger in the truck testified on Montoya's behalf. She was a recovering methamphetamine addict and claimed the six grams found in the truck would not have lasted one day for three people. Montoya rested after her testimony.

¶9            The jury found Montoya guilty of possessing methamphetamine for sale and possessing methamphetamine paraphernalia. The court then held a mitigation hearing at which it heard from Montoya, his mother, two of his brothers, and two of his pastors. The court sentenced Montoya to concurrent terms, the longest of which is 7.5 years' flat time. *See* Ariz. Rev. Stat. ("A.R.S.") § 13-3407(E). Montoya timely appeals.

## DISCUSSION

**¶10** On appeal, Montoya argues only that the trial court violated his right to confront his accuser because the forensic scientist who testified against him was not the same scientist who tested the recovered substance found to be methamphetamine. We review challenges to the admissibility of evidence based on the Confrontation Clause *de novo. State v. Shivers*, 230 Ariz. 91, 92, ¶ 6 (App. 2012).

**¶11** As relevant, the Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI; *see also* Ariz. Const. Art. 2 § 24 ("In criminal prosecutions, the accused shall have the right . . . to meet the witnesses against him face to face."). Forensic reports on substances alleged to be drugs, prepared in anticipation of prosecution, are testimonial statements. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310–11 (2009). If such a report is introduced into evidence, the defendant has a right to confront its author. *Bullcoming v. New. Mexico*, 564 U.S. 647, 661 (2011).

**¶12** But an expert may offer opinions based on facts or data that "experts in the particular field would reasonably rely on" in forming an opinion. Ariz. R. Evid. 703. The facts and data "need not be admissible for the opinion to be admitted." *Id.* This Court has held that the "test for admissibility of an expert's opinion based on facts not in evidence is whether the source relied upon by the expert is reliable." *Pipher v. Loo*, 221 Ariz. 399, 402, ¶ 8 (App. 2009) (quotation omitted). A source is reliable if it "meets the two critical factors of necessity and trustworthiness." *Lynn v. Helitec Corp.*, 144 Ariz. 564, 568 (App. 1984).

**¶13** Ramirez's testimony was admissible and did not violate Montoya's right to confront the witnesses against him. Ramirez testified that the Department's crime laboratory subjects each of its reports to two levels of review, one for technical errors and one for "administrative" errors. This is an acceptable level of reliability. *See Lynn*, 144 Ariz. at 568 ("preparation of a report by a disinterested, expert third party" indicates trustworthiness). Ramirez also testified that she independently reviewed the facts contained in the report and came to her own opinion. *State ex rel. Montgomery v. Karp*, 236 Ariz. 120, 124, ¶ 14 (App. 2014) ("[W]hen an expert gives an independent opinion, the expert is the witness whom the defendant has the right to confront."). The court allowed Montoya to confront Ramirez and Montoya exercised that right.

**¶14** Nevertheless, Montoya contends that Ramirez's testimony was barred by *Bullcoming* and *State v. Smith*, 242 Ariz. 98 (App. 2017). Each case is distinguishable. *Bullcoming* addressed the constitutionality of introducing a report written by an unavailable witness during the testimony of an available, non-author witness. 564 U.S. at 655 ("The State, however, proposed to introduce Caylor's finding as a 'business record' during the testimony of Gerasimos Razatos . . . ."). Here the State did not introduce the report on which Ramirez relied. *Smith* is similar. There, the State sought to introduce "testimony and written reports" of a DNA analyst, including saliva tests conducted by "another technician at the same laboratory." 242 Ariz. at 101, ¶ 7. Again, here the State did not introduce the report, only Ramirez's independent expert opinion that relied on the objective facts contained in the report. This is acceptable. *See State v. Dixon*, 226 Ariz. 545, 553, ¶¶ 35–36 (2011) ("Our cases teach that a testifying [expert] may, consistent with the Confrontation Clause, rely on information in . . . reports prepared by others as long as he forms his own conclusions.").

**¶15** Because the State sought only to introduce an expert opinion based on objective facts contained in a reasonably reliable report, the court did not err in admitting Ramirez's testimony that the crystalline substance was methamphetamine.

## CONCLUSION

**¶16** We affirm Montoya's convictions and resulting sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA