IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

———————————————

THE STATE OF ARIZONA,
*Appellee*,

*v.*

GABRIELA ARAGON,
*Appellant*.

No. 2 CA-CR 2023-0008
Filed August 13, 2024

———————————————

Appeal from the Superior Court in Pima County
No. CR20200013001
The Honorable D. Douglas Metcalf, Judge

**AFFIRMED IN PART; REVERSED IN PART**

———————————————

COUNSEL

Kristin K. Mayes, Arizona Attorney General
Alice M. Jones, Deputy Solicitor General/Section Chief of Criminal Appeals
By Karen Moody, Assistant Attorney General, Tucson
*Counsel for Appellee*

James Fullin, Pima County Legal Defender
By Jeffrey Kautenburger, Assistant Legal Defender, Tucson
*Counsel for Appellant*

**OPINION**

Presiding Judge Sklar authored the opinion of the Court, in which Vice Chief Judge Eppich and Judge Brearcliffe concurred.

S K L A R, Presiding Judge:

¶1      This appeal of convictions arising out of a fatal car crash concerns the United States Constitution's Confrontation Clause. The clause entitles defendants to confront witnesses who have provided testimonial hearsay. *Smith v. Arizona*, 602 U.S. __, 144 S. Ct. 1785, 1791 (2024). Gabriela Aragon argues that under the Confrontation Clause, the state was required to call as a witness the technician who downloaded data from her car's event data recorder (EDR).

¶2      We conclude that the download involved no testimonial statements. Thus, the Confrontation Clause did not require the state to call the technician as a witness. The trial court instead satisfied Aragon's confrontation rights by allowing her to cross-examine the detective who relied on the EDR data in reconstructing the crash. We therefore affirm Aragon's convictions and sentences for negligent homicide, aggravated assault, criminal damage, and driving while under the influence. However, we reverse her conviction for assault, which is multiplicitous.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3      We view the facts in the light most favorable to sustaining the jury's verdicts and resolve all reasonable inferences against Aragon. *See State v. Fierro*, 254 Ariz. 35, ¶ 2 (2022). In December 2019, Aragon spent several hours consuming alcohol at a bar. She then drove through a red light, striking and killing a pedestrian in the crosswalk. She also struck another vehicle and injured its driver.

¶4      Data retrieved from her car's EDR revealed that the car had been traveling nearly double the speed limit when Aragon pressed the brakes, one second before impact. Aragon's blood-alcohol concentration (BAC) was .184 when her blood was drawn almost three hours later.

¶5      Aragon was charged with manslaughter, two counts of aggravated assault, criminal damage, driving under the influence, and driving under the extreme influence of liquor with a BAC of .20 or more.

After a seven-day trial, the jury found her not guilty of manslaughter but guilty of the lesser-included offense of negligent homicide. It also found her guilty of one count of aggravated assault, the lesser-included offense of assault, criminal damage, and driving under the influence. It did not find her guilty of driving under the extreme influence. The trial court sentenced her to concurrent prison terms, the longest sentence being seven-and-a-half years. This appeal followed.

## CONFRONTATION CLAUSE

**¶6** Aragon's Confrontation Clause argument concerns the trial court's denial of a motion to preclude testimony relating to the EDR data. She argues that the testimony should have been precluded unless she could confront the technician who extracted the data. The state did not call the technician to testify. We review challenges to the admissibility of evidence based on the Confrontation Clause de novo. *State v. Bennett*, 216 Ariz. 15, ¶ 4 (App. 2007).

### I. Relevant facts

**¶7** An EDR, often referred to as the "black box," records a vehicle's speed and other information for the few seconds preceding a crash in which the airbags are deployed. Vehicle manufacturers use different EDRs, which require their own equipment and proprietary software to access. Downloading the data involves following protocols that require specialized training. Once the data is downloaded, the software generates a report of the information.

**¶8** After the accident, police hired a technician to download the EDR data from Aragon's car. That download was observed by a detective who later performed a collision reconstruction. That detective had specialized training to retrieve and analyze EDR data. He did not perform the download himself because police lacked the cable that was compatible with the EDR in Aragon's car. The detective testified that the technician attached a cord to the EDR unit, downloaded the data, placed it on an external drive, and departed. The technician performed no analysis of his own.

**¶9** The speed limit at the accident site was forty miles per hour. The EDR data revealed that the brakes were pressed one second before impact, when the car was traveling seventy-eight miles per hour. At impact, its speed was sixty-two miles per hour. In performing the

reconstruction, the detective relied on this information. He also testified about it to the jury.

## II.    Applicable case law concerning testimonial statements

**¶10**        The Confrontation Clause mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. The Arizona Constitution contains a similar provision, which our courts have interpreted as coextensive with the Confrontation Clause. Ariz. Const. art. II, § 24 (guaranteeing the right "to meet the witnesses against" criminal defendants "face to face"); *see also State v. Carr*, 216 Ariz. 444, n.2 (App. 2007) ("[O]ur supreme court has determined that Arizona's constitution provides substantially the same right to confrontation as the Sixth Amendment and requires no different analysis.") (citing *State v. Vincent*, 159 Ariz. 418, 432-33 (1989)). The Confrontation Clause "prohibit[s] the introduction of testimonial statements by a nontestifying witness, unless the witness is 'unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Ohio v. Clark*, 576 U.S. 237, 243 (2015) (quoting *Crawford v. Washington*, 541 U.S. 36, 54 (2004)).

**¶11**        As the United States Supreme Court recently explained, the Confrontation Clause "'applies only to testimonial hearsay'—and in that two-word phrase are two limits." *Smith v. Arizona*, 602 U.S. __, 144 S. Ct. 1785, 1792 (2024) (quoting *Davis v. Washington*, 547 U.S. 813, 823 (2006)). First, the clause applies only to testimonial statements. *Davis*, 547 U.S. at 822. Second, it applies only to hearsay. *Smith*, 144 S. Ct. at 1792.

**¶12**        We first address whether the technician's download of the EDR data involved any testimonial statements. In this analysis, we assess whether a statement has the primary purpose of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822. Documents are testimonial statements when "created solely for an 'evidentiary purpose,'" such as when they are "made in aid of a police investigation." *Bullcoming v. New Mexico*, 564 U.S. 647, 664 (2011) (quoting *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009)).

**¶13**        In an analogous case, this court held in *State v. Ortiz*, 238 Ariz. 329, ¶ 59 (App. 2015), that the "work and notes" of non-testifying technicians who prepared a DNA profile were not testimonial. The DNA analyst who testified had relied on the technicians' work to prepare a report, which concluded that the victim had contributed to DNA found on the defendant's body and clothes. *Id.* ¶ 28. This court explained that the

analyst's report was testimonial because it formed the basis for her opinion. *Id.* ¶ 59. But the data prepared by the technicians "had no evidentiary value" until the analyst had completed her work. *Id.*

**¶14** *Ortiz* relied on the Arizona Supreme Court's decision in *State v. Gomez*, 226 Ariz. 165 (2010). That case reached the same result, also in the DNA-profile context, without precisely identifying what material was testimonial. *Gomez* concluded that a DNA analyst's testimony "did not offend the Confrontation Clause" because she had reviewed the work of the technicians who had processed the DNA samples. *Id.* ¶ 21. The analyst also testified from her own knowledge as to the procedures used, and she answered questions during cross-examination about the accuracy of the end results. *Id.*

## III.   Whether the EDR data involves testimonial statements

**¶15** This case requires us to apply *Ortiz* and *Gomez* to EDR data rather than DNA profiles. Like the defendants in those cases, Aragon argues that the technician was required to testify even though he simply gathered information that a testifying witness relied upon in his analysis. And like the courts in those cases, we disagree. The EDR data was not testimonial. When it was created, it was not done so solely for an evidentiary purpose. *See State v. King*, 213 Ariz. 632, ¶ 25 (App. 2006) (concluding that MVD records were not testimonial because they "are required to be kept by statute and exist independently of any criminal prosecution"). Rather, the data, which was maintained by the EDR itself, was simply a record of the car's speed, brake application, seatbelt usage, and related information during the incident and just before.

**¶16** Similarly, the technician's retrieval of the EDR data involved no testimonial statements. As we explained in *Ortiz*, courts have generally concluded that the "failure to call a technician from the preliminary steps" of a process does not violate the Confrontation Clause. 238 Ariz. 329, ¶ 57; *see also Gomez*, 226 Ariz. 165, ¶ 21 ("The technicians at most could have testified about the mechanical steps they took to process the DNA samples."). Although Aragon argues that the technician undertook more than preliminary steps and instead "generated a report," that report was simply the record of the EDR data, which came from the EDR itself. No evidence suggests that the technician manipulated or analyzed the data, or that he made any statements about it. It follows that none of his work was testimonial.

¶17 The EDR data did not become relevant to any testimony until after the detective analyzed and interpreted it in his reconstruction. *See Ortiz*, 238 Ariz. 329, ¶ 59 ("The DNA profiles had no evidentiary value until they were compared and matched by [the analyst]."). That reconstruction was testimonial. But just as in *Ortiz* and *Gomez*, that detective testified at trial and was subject to extensive cross-examination. Because he observed the technician's download, he was also able to testify about that process, with which he was generally familiar due to his training and experience. In that regard, the cross-examination closely resembled that which *Gomez* found sufficient. Aragon's confrontation rights were therefore satisfied.

## IV. Addressing Aragon's counter-arguments

¶18 Aragon, however, argues that *Bullcoming*, 564 U.S. 647, and *State v. Smith*, 242 Ariz. 98 (App. 2017), compel a different result. Both those cases found Confrontation Clause violations where analysts who participated in testing did not testify. *Bullcoming*, 564 U.S. at 657-58; *Smith*, 242 Ariz. 98, ¶ 1. In *Bullcoming*, the non-testifying analyst had recorded the defendant's blood-alcohol content. 564 U.S. at 654-55. He had also certified that the seal of the sample was received intact, the statements in the report were correct, and he had followed the procedures listed in the report. *Id.* at 655, 660.

¶19 In *Smith*, the non-testifying analyst had conducted a test and concluded that saliva had been found on the victim's underwear. *Smith*, 242 Ariz. 98, ¶¶ 7, 13. Although a different analyst testified, we concluded that her testimony was insufficient because she "acted only as a 'conduit for another non-testifying expert's opinion.'" *Id.* ¶ 10 (quoting *Gomez*, 226 Ariz. 165, ¶ 22).

¶20 We are unpersuaded by Aragon's analogies to *Bullcoming* and *Smith*. In those cases, the non-testifying analysts had provided statements of their own. *See Bullcoming*, 564 U.S. at 655, 660; *see also Smith*, 242 Ariz. 98, ¶¶ 7, 13. By contrast, in this case—like in *Gomez* and *Ortiz*—the non-testifying technician made no statements. *Gomez*, 226 Ariz. 165, ¶ 21; *Ortiz*, 238 Ariz. 329, ¶¶ 58-59. For this reason, we concluded in *Ortiz* that *Bullcoming* did not invalidate *Gomez*. *Ortiz*, 238 Ariz. 329, ¶ 58. Aragon has provided us with no basis for departing from this conclusion.

¶21 Aragon also argues that the detective lacked sufficient knowledge of the protocols used by the technician. Although she frames this issue as a Confrontation Clause argument, she has cited no authority

suggesting that the Confrontation Clause requires the testifying witness to possess certain credentials or knowledge. The detective was subject to cross-examination, and Aragon was free to argue to the jury that his testimony was unreliable. Nor has Aragon pointed to a rule of evidence that would preclude his testimony.

¶22 Thus, we conclude that the technician's work did not implicate the Confrontation Clause because it involved no testimonial statements. We need not address the second portion of the Confrontation Clause analysis, which is whether any such statements were offered for the truth of the matter asserted.

## MULTIPLICITOUS CONVICTIONS

¶23 Aragon also argues that her conviction for assault must be vacated because it is multiplicitous with her conviction for aggravated assault and violates double jeopardy. *See State v. Ortega*, 220 Ariz. 320, ¶ 9 (App. 2008) ("[A] defendant may not be convicted for both an offense and its lesser included offense because they are considered the 'same offense' for double jeopardy purposes."); *see also State v. Erivez*, 236 Ariz. 472, ¶ 17 (App. 2015) (assault is lesser-included offense of aggravated assault). The state concedes error. We agree and reverse Aragon's conviction for assault.

## DISPOSITION

¶24 For the foregoing reasons, we reverse Aragon's conviction for assault but affirm all other convictions and sentences.