IN THE SUPREME COURT OF THE STATE OF DELAWARE

JASON WILCOX, §
§
Defendant Below, § No. 44, 2025
Appellant, §
§ Court Below: Superior Court
v. § of the State of Delaware
§
STATE OF DELAWARE, § Cr. ID No. 2405010892 (S)
§
Appellee. §
§

Submitted: November 12, 2025
Decided: February 6, 2026

Before **SEITZ**, Chief Justice; **LEGROW** and **GRIFFITHS**, Justices.

## <u>ORDER</u>

The Court, having considered the briefs and the record below, rules as follows:

(1) While driving over the speed limit on Delaware Route 9, Jason Wilcox crashed into a minivan driven by Jason Wright with his six family members. Wilcox fled the scene. Three people in the minivan were killed and four others injured. A grand jury indicted Wilcox for crimes related to the collision. A jury found him guilty of all charges. The Superior Court sentenced Wilcox to lengthy incarceration followed by decreasing level of probation.

(2) Wilcox has appealed his convictions, claiming that the Superior Court: (a) erred in denying his motion to compel *Brady* material, (b) erred by admitting into

evidence data from his car's electronic data recorder ("EDR"), and (c) under plain error review, erroneously instructed the jury as a matter of law. We affirm.

(3) On December 24, 2022, around 8 p.m., Wilcox was driving his 2016 Range Rover Sport westbound on Lewes-Georgetown Highway ("Route 9") in a 50 mile an hour speed limit zone. The two-lane road was dry, the weather clear. Cars on Route 9 have the right-of-way and a clear view of the intersection where the collision occurred. After stopping at a stop sign at the intersection of Minos/Conaway Road and Route 9, Wright entered the Route 9 westbound lane (Wilcox's lane) in his Honda Odyssey minivan with six family members. He intended to turn left onto eastbound Route 9. The cars collided. The Range Rover's EDR showed that, five seconds before the crash, Wilcox accelerated from 73.50 miles per hour to 82.34 miles per hour. The EDR recorded the Range Rover impact speed at 81.16 miles per hour.[1]

(4) Three minivan occupants were killed, and four others seriously injured. Wilcox fled the scene. A grand jury indicted Wilcox for three counts of Manslaughter, four counts of Assault First Degree, one count of Speeding, one count of Leaving the Scene of a Collision Resulting in Death, one count of Failure to

---

[1] App. to Appellant's Am. Opening Br. at A18-19, A274, A282, A437, A440-42, A614-16, A747-48, A763-64, A785-86, A810-11 [hereinafter A___].

2

Report a Collision Resulting in Injury or Death, one count of Assault Second Degree, and one count of Assault Third Degree.[2]

(5)     Prior to trial, Wilcox filed a motion to compel disclosure of grand jury proceedings related to Wright and the collision.  Wilcox speculated that the State had attempted to indict Wright for collision-related charges because he had some culpability for the collision.  Thus, according to Wilcox, he was entitled to the basis for the State's decision to attempt to indict Wright.  The court denied the motion, ruling that grand jury proceedings are confidential, and no exception applied.[3]

(6)     Wilcox followed the denial of his motion to compel with a non-specific motion to compel *Brady*[4] material.  Wilcox argued that "logic would dictate" that Wright's driving "likely violated" several motor vehicle laws.[5]  According to Wilcox, none of the State's evidence shared with Wilcox showed that Wright was at fault.  Therefore, he speculated, there must be more evidence that was not shared with the defense.  The court denied the motion, reasoning that the State represented

---

[2] A3, A606-08.

[3] A5, A117-125, A131-32, A167-68.

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

[5] A144-45.

3

that it had provided all non-privileged materials related to the collision and was not required to disclose its theory or possible charges against Wright.[6]

(7)     During trial, Wilcox objected to the admissibility of data from the Range Rover's EDR and an RCM Readout Report that analyzed the car's actions just before the collision.[7]  The court excluded the RCM Readout Report as hearsay but relied on Delaware Rule of Evidence 901(a) to admit into evidence the data from the EDR.[8]

(8)     The parties attended two prayer conferences which, in part, addressed a foreseeability jury instruction.  Wilcox did not object to the following instruction addressing the foreseeability of actions by other drivers: "If you find that the Defendant could not have reasonably anticipated or foreseen or was not aware that the other driver's motor vehicle would enter the intersection, you must find that Defendant's actions were not reckless [or criminally negligent]."[9]  After closing statements, the jury found Wilcox guilty of all charges.  He was sentenced to 156

---

[6] A167-68.

[7] A156-65, A528-39, A542-54, A662-63.  The RCM Readout Report contained information regarding occupant status, acceleration, speed, brake usage, steering wheel usage, safety device deployment.  A156-65.

[8] A658-63.

[9] A1017-18, A1161-62.

years at Level V suspended after 17 years and 6 months for decreasing levels of supervision.[10]

(9)     As noted earlier, Wilcox raises three errors on appeal.  First, he contends that the State did not disclose all exculpatory material in its possession related to the State's alleged failed attempt to indict Wright for offenses related to the collision.  According to Wilcox, the information would be exculpatory to rebut the inference that Wilcox was the sole cause of the crash.  Second, Wilcox argues that the court erred by admitting data from the Range Rover's RCM Readout Report because it was not self-authenticating, and chain of custody was not proven.  And finally, in a new argument on appeal, Wilcox claims that the court's foreseeability jury instruction was erroneous as matter of law because it implied that Wilcox had a duty to anticipate the negligent acts of other drivers.

(10)     We review questions of law *de novo*, including whether the State failed to disclose exculpatory or impeachment evidence.[11]  We review a court's decision to admit evidence to determine whether the court exceeded its discretion.[12]  We review

---

[10] A10; Exhibit A to Am. Opening Br.

[11] *Mobley v. State*, 346 A.3d 1127, 2024 WL 5316320, at *6 (Del. Dec. 5, 2024) (TABLE); *McGuiness v. State*, 312 A.3d 1156, 1179 (Del. 2024).

[12] *Burrell v. Delaware*, 332 A.3d 412, 424 (Del. 2024).

5

a court's decision to issue challenged jury instructions *de novo*.[13] This Court will review forfeited arguments for plain error.[14]

(11) Under *Brady v. Maryland*, prosecutors must disclose exculpatory evidence in their possession that might be material to the outcome of the case.[15] To establish a *Brady* violation, a defendant must prove: "(1) evidence exists that is favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence is suppressed by the State; and (3) its suppression prejudices the defendant."[16]

(12) Wilcox contends that he learned before trial that the State attempted to indict Wright for collision-related charges but failed to secure an indictment. According to Wilcox, there must have been more undisclosed evidence regarding Wright's fault. Wilcox says that the State's failure to disclose the unidentified exculpatory material violated *Brady*.

(13) Wilcox, however, stumbles on his assumption – that the State has *Brady* material that it did not share with the defense. As an initial matter, we note that

---

[13] *Ford v. State*, 341 A.3d 454, 465 (Del. 2025).

[14] *Suber v. State*, __A.3d__, 2026 WL 184867, at *4-5 (Del. Jan. 15, 2026).

[15] 373 U.S. at 91.

[16] *Wright v. State*, 91 A.3d 972, 988 (Del. 2014) (quoting *Starling v. State*, 882 A.2d 747, 756 (Del. 2005)).

Wilcox did not appeal the Superior Court's denial of his access to grand jury materials.[17] He is limited, therefore, to his speculation that the State must have more exculpatory information related to the crash that it has not disclosed. But the State represented that it had an "open file" policy and disclosed all the facts and materials related to the crash.[18] We take the State at its word that all non-privileged or non-confidential exculpatory materials were disclosed to Wilcox before trial.[19] Thus, *Brady* was not violated.

(14) Next, Wilcox argues that the court erred by admitting into evidence the Range Rover's EDR data under Delaware Rule of Evidence 901(a). By way of background, modern cars are equipped with EDRs, also known as crash data recorders or airbag control modules.[20] EDRs record data such as speed, acceleration, accelerator and brake use, and steering wheel use.[21] Following a crash, an EDR will preserve the data leading up to the accident.[22]

---

[17] Grand jury proceedings are confidential under Super. Ct. Crim. R. 6.

[18] A126-27.

[19] Del. Prof. Cond. R. 3.3(a)(1) ("(a) A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]").

[20] A589-95.

[21] A590.

[22] A590-93.

(15)  Delaware State Police have a Data Collection System used to extract EDR data and create a report.[23]  But the EDRs in the cars involved in the collision were incompatible with Delaware's system.[24]  Corporal Kenneth Argo mailed the Range Rover's EDR to the manufacturer in France to extract the data.[25]  The manufacturer returned a RCM Readout Report with occupant status, acceleration, speed, brake usage, steering wheel usage, and safety device deployment.[26] EDR data from the Range Rover showed that five seconds before collision, Wilcox accelerated from 73.50 to 82.34 miles per hour without braking or attempting to avoid collision.[27]  The impact speed was 81.16 miles per hour.[28]

(16)  Rule 901(a) states: "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Under the Rule,

---

[23] A513-14.

[24] A511-12.

[25] A513-14.  Corporal Argo testified that he did not send the minivan's EDR for data extraction. As he explained, "[b]ased on the year of the Honda of 2008 when it said that it was unsupported, we just surmised that it was unsupported because there was no data." A795-801.

[26] A156-65.

[27] A763-64.

[28] A764.

the proponent "need only 'establish a rational basis from which the jury could conclude that the evidence is connected with the defendant.'"[29]

(17)   Wilcox contends the State could not authenticate the EDR data without testimony about its chain of custody and extraction.  He argues that the police officer authenticating the data, Corporal Argo, did not confirm the chain of custody and was unfamiliar with the extraction system used.  This Court has held, however, that a witness is not needed to authenticate evidence if the jury can infer the data's source. For instance, in *Moss v. State*, our Court found that text messages can be properly authenticated through evidence from which a jury could reasonably infer that the defendant was the author of the messages.[30]

(18)   Wilcox tried to distinguish *Moss*, arguing that the EDR data lacked testimony from all necessary custodians to establish chain of custody and prove that the data came from the Range Rover's EDR.  He contends that, without a custodian to testify about the procedures, the data's reliability cannot be verified.  But the State is not required to produce evidence of every link in the chain of custody; rather, it "must simply demonstrate an orderly process from which the trier of fact can

---

[29] *White v. State*, 258 A.3d 147, 155 (Del. 2021) (quoting *Cabrera v. State*, 840 A.2d 1256, 1265 (Del. 2004)).

[30] 166 A.3d 937, 2017 WL 2806269, at *3-4 (Del. June 28, 2017) (TABLE).

conclude that it is improbable that the original item has been tampered with or exchanged."[31]

(19)   In *White v. State*, this Court held that there are no "hard-and-fast rules" regarding how the State must meet the authentication requirement if the evidence supports a finding that the item is what the proponent claims it is.[32]  In *White*, a law enforcement officer retrieved a phone from the defendant's bedroom.  The phone contained messages from the defendant's significant other that named the defendant.[33]  The officer also testified regarding how the technician generated the text message reports.[34]  The State sought to authenticate text messages downloaded from the defendant's cellphone without introducing subscriber information.[35] Based on the circumstantial evidence, we agreed that the State established a rational basis for inferring that the defendant owned the phone and wrote the messages.[36]

(20)   Here, the State's evidence was sufficient "to clear the low bar for authentication."[37]  The VIN number confirmed that the data matched the Range

---

[31] *Demby v. State*, 695 A.2d 1127, 1131 (Del. 1997).

[32] 258 A.3d at 155.

[33] *Id.* at 155-56.

[34] *Id.*

[35] *Id.*

[36] *Id.* at 156.

[37] *Id.* at 155.

Rover's EDR.[38]  The report included photos of the device and its label.[39]  The data is consistent with evidence from the collision scene, including the absence of braking data and skid marks.[40]  The data showed only one airbag deployed and one seatbelt in use, consistent with surveillance video showing one occupant fleeing the scene.[41]  Finally, the data recorded high speeds consistent with the extensive damage to the Range Rover and the minivan from a high-speed collision.[42]  Based on the foregoing evidence, the jury could connect the EDR data to the Range Rover.  There was sufficient evidence to authenticate the data under D.R.E 901(a).[43]

(21)  Finally, for the first time on appeal, Wilcox argues that the court gave an improper jury instruction addressing the foreseeability of the negligent conduct of others.  The argument is a bit hard to follow but we think it goes like this: first, 11 *Del. C.* § 263 states that "[t]he element of reckless or negligent causation is not

---

[38] A660.

[39] *Id.*

[40] A661, A748, A750-55, A817-18, A847.

[41] A633, A750-51.

[42] A747-48, A763.

[43] Wilcox argues that admitting the EDR data violated his Sixth Amendment confrontation rights. But the data admitted (and not the report) was nontestimonial and therefore did not raise confrontation concerns.  *See Arizona v. Aragon*, 555 P.3d 571, 574 (Ariz. Ct. App. 2024) (finding a technician's retrieval by downloading the EDR data involves no testimonial statements); *Pennsylvania v. Thompson*, 314 A.3d 922, 928 (Pa. Super. Ct. 2024) (explaining EDR data is not testimonial because an EDR cannot be a witness within the meaning of the Confrontation Clause).

established if the actual result is outside the risk of which the defendant is aware or, in the case of negligence, of which the defendant should be aware . . .”; second, according to *Bullock v. State*,[44] drivers do not have a duty to anticipate the negligence of other drivers; and third, therefore, even if the court instructed the jury following § 263, Wilcox was entitled to “a proper jury instruction plainly instructing [the jury] that Mr. Wilcox had no duty to foresee or anticipate another driver’s negligence.”[45]

(22) Under Supreme Court Rule 8, only questions that are fairly presented to the trial court may be presented for review on appeal.[46] Wilcox did not raise the argument in the Superior Court. As a result, the argument is forfeited. Rule 8, however, “offer[s] an escape hatch that allows the Court to review an unpreserved argument ‘when the interests of justice so require.’”[47] But the interests of justice exception “is extremely limited and reserved only for plain errors that affect a party’s substantial rights.”[48] To meet his plain error burden, Wilcox must demonstrate that “(1) the record is adequate to review his claim, (2) an error occurred, (3) the error is

---

[44] 775 A.2d 1043 (Del. 2001).

[45] Opening Br. at 32.

[46] *Suber*, 2026 WL 184867, at *4.

[47] *Id.*

[48] *Id.* Plain errors are “defects which are apparent on the face of the record, which are basic, serious, and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice.” *Id.* at *5 (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986)).

plain, and (4) the error adversely affected his substantial rights by jeopardizing the fairness and integrity of the trial process."[49]

(23) Here, Wilcox has not demonstrated that an error occurred. The court instructed the jury under § 263 that reckless and negligent conduct does not result in criminal culpability if "the actual result is outside the risk of which the defendant is aware or, in the case of negligence, of which the defendant should be aware."[50] In other words, the jury understood that if Wright's conduct posed a risk outside a risk that Wilcox was aware of or should have been aware of, the jury should not find that Wilcox caused the collision. Wilcox got the jury instruction he wanted.

(24) If Wilcox is arguing that, after *Bullock*, he was entitled to a jury instruction drawing a bright-line rule that he had no duty to anticipate the negligent acts of others, that is an incorrect statement of the law. In *Bullock*, our Court held that the failure to instruct the jury under § 263 was plain error because, under the facts of that case, Bullock had no duty to anticipate another driver violating a traffic signal and entering the intersection before the collision.[51] Here, the jury was instructed under § 263. And as § 263 contemplates, it is up to the jury to decide whether the other person's negligence was "outside the risk of which the defendant

---

[49] *Id.* at *6.

[50] A1037-41.

[51] 775 A.2d at 1045.

13

is aware or, in the case of negligence, of which the defendant should be aware." There was no error here.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice